# Exhibit 5

## Margaret O'Donnell

| | |
|---|---|
| **From:** | Margaret O'Donnell <mod@dcr.net> |
| **Sent:** | Wednesday, March 27, 2013 11:30 AM |
| **To:** | 'Katherine Siereveld' |
| **Cc:** | 'MMall@bop.gov' |
| **Subject:** | RE: JKadamovas -- letter I sent to Warden in October 2012 |
| **Attachments:** | Letter to Warden Caraway; Re: Letter to Warden Caraway; warden.pdf |

I am following up on my email of last week. I attach my emails from last fall as well as the documentation my client just sent me indicating that the unit team believes nothing was ever received. I would appreciate a response. The loss of legal materials belonging to a death row prisoner is concerning. As I stated in my letter there is nothing that can be done to recreated lost files, but if procedures are not implemented to guard against this it will keep happening. The loss of my letter does not make me feel good about more legal materials not being lost.

Thank you.

Margaret O'Donnell

---

**From:** Margaret O'Donnell [mailto:mod@dcr.net]
**Sent:** Tuesday, March 19, 2013 11:33 AM
**To:** 'Katherine Siereveld'
**Cc:** 'MMall@bop.gov'
**Subject:** JKadamovas -- letter I sent to Warden in October 2012

Katherine,

Attached is a letter I sent to the warden last October to which I have never received a response. As I recall, I e-mailed it to you just before the meeting of the lawyers with the warden about death row conditions and concerns. You advised me to send it to Warden Caraway directly, which I did.

Mr. Kadamovas informed me yesterday that Melissa Bayless, who I am copying on this email, informed him that my letter was never received. The loss of important legal materials is a serious matter. As I said in the letter there is nothing to be done about the lost materials, but a plan for avoiding such loss in the future should be implemented and followed. Mr. Kadamovas is attempting to address some of these issues on his own with the unit staff.

Thank you for your attention to my concerns.

Margaret O'Donnell
Attorney at Law
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

1

Margaret O'Donnell
Attorney at Law
P.O Box 4815
Frankfort, Kentucky 40604-4815
(502) 320-1837
mod@dcr.net

*records was completed and this letter was never received.*

*M Bayless 3/15/13*

October 31, 2012

John F. Caraway
Warden
FCC Terre Haute
4700 Bureau Road South
Terre Haute, IN   47802

RE: Jurijus Kadamovas, Reg. No. 21050-112

Dear Warden Caraway,

I am writing you on behalf of my client, Jurijus Kadamovas, who is under a sentence of death and has been incarcerated since 2007 in the Special Confinement Unit.. Specifically, I want to advise you of my concerns about ongoing difficulties in maintaining the safety and security of Mr. Kadamovas's legal files and materials. I also write to ask you to explore options that will allow death row prisoners, who want to work on their cases, to securely maintain their legal files on site in a manner that best allows them to meaningfully work on their cases.

Since he arrived on the SCU, Mr. Kadamovas has never been allowed to keep with him his digital discovery and case materials, but has kept some hard copy files in his cell.[1]  He, in 2009, learned that his case files and other property were not secure when fellow prisoners, during cell rotations, were routinely locked in the unoccupied cell where his case materials were then kept. The expensive handheld Russian-English translation device purchased by Mr. Kadamovas's attorneys for his use, which he, by policy, also cannot keep in his cell, was inexplicably stolen, kept in a fellow prisoner's cell, damaged beyond repair and had to be replaced.  Mr. Kadamovas subsequently also learned that two of his case-related CDs were found in the cell of a mentally ill death row prisoner, who, at some point, had also been locked in the unoccupied cell where Mr. Kadamovas's legal materials were maintained.

---

[1]After his trial, officials at the Los Angeles Metropolitan Detention Center released Mr. Kadamovas's discovery and case materials to his trial counsel, who then forwarded them to Mr. Kadamovas at USP Terre Haute. When the case materials arrived, Terre Haute officials confiscated some 61 CDs as contraband, even though Mr. Kadamovas had been allowed to keep those same CDs in his cell during the course of his trial. The remaining CDs to which prison officials did ultimately allow Mr. Kadamovas access were in disarray.

More recently, in the last 12 months, through a series of memos from SCU Manager Michael Stephens, death row prisoners were advised they were only authorized to have in their possession "up to three (3) cubic foot [sic] of legal material with the stipulation that it is to prepare for or respond to an active case." The memos advised that prisoners were to prioritize and determine what needed to be mailed out. Prisoners, including Mr. Kadamovas, were informed that any legal materials beyond 3 cubic feet that were not mailed out would be destroyed.

In order to prevent his important legal materials from being destroyed, Mr. Kadamovas's attorneys sent him the funds to cover the cost of shipping three banker's boxes of legal materials to me. This was not what Mr. Kadamovas wanted to do, but felt he had no choice. So, on September 11, 2012, he sent the three boxes of legal materials to me. I have only ever received two of the boxes, and one of the boxes that arrived was clearly not in the original box in which it had been packed by Mr. Kadamovas. On September 20, 2012, he started receiving individual pieces of old mail which Mr. Kadamovas knew had been in one of the boxes he had sent to me. He received additional old mail from the boxes on September 21, 2012. A member of the SCU team later confirmed that three boxes had been sent and that one of Mr. Kadamovas's boxes had clearly been compromised in transit. Then, on October 11, 2012, Mr. Kadamovas received a pack of materials that had also been in the missing box, but, in between his folders were six folders that belonged to persons other than him and whose paperwork seemed to have nothing to do with criminal or prison related matters.

Mr. Kadamovas has sought an explanation for why this might have happened and why his important and irreplaceable legal materials were not protected and did not arrive safely at their intended destination. No prison officials offer any explanation, except that it happened when in the hands of the postal service and that any remedy is through that agency.[1]

BOP Policy Statement 1315.07 does not limit storage of legal materials to three cubic feet, but rather "guarantees that all BOP prisoners, not in segregation, may, ordinarily, have in their possession at least three cubic feet of legal materials." The policy, further, goes on to provide that "[a]lternate storage areas may be provided . . . for storing excess legal materials."

There is nothing that can now be done to undo the loss of Mr. Kadamovas's legal materials in 2009, nor the more recent losses from this past September. As you embark on your new job as the FCC warden, I write not only to alert you of the ongoing past problems with legal materials in the SCU, but to also request that you and your staff consider implementing policies that take into consideration the fact that the prisoners in the SCU are under death sentences, and that the proceedings that have led to their convictions and sentences are much longer and have larger records than non-capital criminals cases.

---

[1] Mr. Kadamovas's administrative grievance was just rejected because he did not file it within 20 days of when he first knew there was an issue, even though he had complied with administrative grievance policy and sought first to informally resolve the matter with the unit team and did not receive that response until October 9th.

Access to and safety of death row prisoners' legal materials, both paper and digital, is of vital importance to them as well as their legal teams. Alternatives include allowing Mr. Kadamovas to keep his most important files and his translation device in his cell while the excess legal materials could be maintained in an unoccupied cell that is secure and to which no other prisoners are allowed access to Mr. Kadamovas's legal materials.

Thank you for your consideration.

Sincerely,

Margaret O'Donnell
Attorney at Law