UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

Jurijus Kadamovas
            PETITIONER,
T. J. WATSON
WARDEN UNITED STATES
PENITENTIARY, TERRE HAUTE
(U.S.P.)
            RESPONDENT.

CAUSE NO:
2:19-cv-00540-JPH-MJD

FILED

MAR 3 0 2020

U.S. CLERK'S OFFICE
TERRE HAUTE, INDIANA

## AMENDED AND SUPPLEMENTED COMPLAINT - PETITION

COMES THE PETITIONER Jurijus Kadamovas PRO-SE, AND FOR HIS CAUSE OF ACTION STATES AS FOLLOWS:

Kadamovas INCORPORATES HIS Original PETITION AND PETITIONER's RESPONSE TO COURT ORDER DIRECTING PETITIONER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE DISMISSED WITH PREDUDICE AS BARRED BY THE SAVING CLAUSE 28 USC § 2255 (E) FILED 01/16/20 Doc. No. 3. WITH ALL EXHIBITS AND ATTACHMENTS BY REFERENCE AS IF RESTATED FULLY HEREIN AND AMENDING - SUPPLEMENTING AS FOLLOWS.

# Kasamovas Recently Learned

A petitioner can proceed under 28 U.S.C.S. § 2241 where he meets the "Escape Hatch" conditions set forth in 28 U.S.C.S. § 2255 (E), that is, where he has (1) made a claim of Actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim.

In the 7th, 9th (and other) Circuits, a claim of Actual innocence for purposes of "Escape Hatch" - "Saving clause" of 28 U.S.C.S § 2255 is tested by the standard articulated by the United States Supreme Court in <u>Bousley v. United States:</u> To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.

Section 2241 authorizes federal courts to issue writs of habeas corpus, but § 2255 (E) makes 2241 unavailable to federal prisoner unless it "appears that the remedy by motion (under 2255) is inadequate or ineffective to test the legality of the detention." This court (the 7th Cir.) has held that § 2255 is "inadequate or ineffective" when it cannot be used to address novel development in either statutory or constitutional law, whether

2.

THOSE DEVELOPMENTS CONCERN THE CONVICTION OR THE SENTENCE. SEE, E.G., IN RE DEVENPORT, 147 F.3d 605 (7TH CIR. 1998); BROWN v. CARAWAY, 719 F.3d 583 (7TH CIR. 2013); WEBSTER v. DANIELS, 784 F.3d 1123 (7TH CIR. 2015) (EN BANC)

IN GENERAL, HABEAS CORPUS PETITIONERS MAY NOT RAISE ANY ISSUE THAT THEY MIGHT HAVE PRESENTED ON DIRECT APPEAL. McCOY v. UNITED STATES, 815 F.3d 292, 295 (7TH CIR. 2016). A PETITIONER MAY, HOWEVER, OVERCOM PROCEDURAL DEFAULT BY SHOWING CAUSE FOR THE DEFAULT AND ACTUAL PREJUDICE, BOUSLEY v. UNITED STATES, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed 2d 828 (1998), OR THAT "FAILURE TO CONSIDER THE DEFAULTED CLAIM WILL RESULT IN A FUNDAMENTAL MISCARRAGE OF JUSTICE," JOHNSON v. LOFTUS, 518F. 3d 453, 455-56 (7TH CIR. 2008).

I ALSO HAVE LEARN PROPER TERMINOLOGY AND DEFINITIONS FOR PHRASES LIKE "SUPPRESSED EVIDENCE", OR "SPOLIATION OF EVIDENCE" AND OTHERS, AND NOW MORE PROPERLY CAN FORMULATE MY FORMAL ACCUSATIONS.

I BELIEVE THE PROSECUTORS WAS INTENTIONALLY AND KNOWINGLY PRESENT FALSE EVIDENCE AGAINST ME DURING THE TRICE, THEY ARE TAMPERED AND FABRICATED EVIDENCE TO OBTAIN A WRONGFUL CONVICTION, AND THE BOP OFFICIALS HELPING THEM TO COVER-UP, BY SUPPRESSING SPOLIATING AND DESTROING EVIDANCE

3.

OF MY ACTUAL INNOCENCE AND PROSECUTORIAL NEFA-
RIOUS ACTS AND MALICIOUS MISCONDUCT.

## SUPPRESSED EVIDENCE
### DUE PROCESS VIOLATION.

THE SUPREME COURT HAS MADE CLEAR THAT BRADY's
"REASONABLE PROBABILITY" STANDARD IS LESS ONEROUS
THAN THE TRADITIONAL PREPONDERANCE STANDARD. SEE
KYLES, 514 U.S. AT 434. INDD, "THE QUESTION IS NOT
WHETHER THE DEFENDANT WOULD MORE LIKELY THAN
NOT HAVE RECEIVED A DIFFERENT VERDICT WITH THE
EVIDENCE, BUT WHETHER IN ITS ABSENCE HE RECEIVED
A FAIR TRIAL, UNDERSTOOD AS A TRIAL RESULTING IN
A VERDICT WORTHY OF CONFIDENCE." Id. TO MAKE THIS
DETERMINATION, COURTS MUST ASSESS THE CUMULATIVE
EFFECT OF ALL THE SUPPRESSED EVIDENCE" IN THE
CONTEXT OF THE ENTIRE RECORD." UNITED STATES v
AGURS, 427 U.S. 97, 112, 96 S. CT. 2392, 49 L. ED. 2d
342 (1976); SEE ALSO KYLES 514 U.S. AT 460.

THE SUPPRESSION BY THE PROSECUTION OF EVIDENCE
FAVORABLE TO AN ACCUSED VIOLATES DUE PROCESS
WHERE THE EVIDENCE IS MATERIAL EITHER TO GUILT
OR TO PUNISHMENT, IRRESPECTIVE OF THE GOOD FAITH
OR BAD FAITH OF THE PROSECUTION. THE "BRADY RULE"
IS NOT INTENDED TO DISPLACE THE ADVERSARY SYSTEM
AS THE PRIMARY MEANS BY WHICH TRUTH IS UNCOVERED

4.

, BUT TO ENSURE THAT A MISCARRIAGE OF JUSTICE DOES NOT OCCUR. SUPPRESSED EVIDENCE TAKES ON PARTICULAR SIGNIFICANCE - AND IS PLAINLY MATERIAL - WHERE THE PROSECUTION'S CASE RESTS SOLELY ON THE CREDIBILITY OF AN EYEWITNESS.

(DURING MY SENTENCING DAY ON MARCH 12 2008 MY LAWYER POINTED OUT TO THE JUDGE THAT... THE GOVERNMENT RELIES EXCLUSIVELY ON THE TESTIMONY OF COOPERATING WITNESSES, AS THEY REFER TO THEM... THERE IS NOT ONE PIECE OF PHYSICAL EVIDENCE; THERE IS NOT ONE PIECE OF SCIENTIFIC EVIDENCE THAT TIES MR KASHAMOUAS TO THE KILLING OF ANYONE. THERE IS NOT ANY DNA EVIDENCE... SEE EXHIBIT 1 TO PETITIONER'S RESPONSE TO COURT ORDER... DOC#4 AT 10-12)

IT IS WELL- ESTABLISHED THAT A POLICE OFFICER WHO MANUFACTURES FALSE EVIDENCE AGAINST A CRIMINAL DEFENDANT VIOLATES DUE PROCESS IF THAT EVIDENCE IS LATER USED TO DEPRIVE THE DEFENDANT OF HIS LIBERTY IN SOME WAY. TO ESTABLISH SUCH A VIOLATION THE PLAINTIFFS MUST DEMONSTRATE NOT ONLY THAT THE DEFENDANT OFFICERS CREATED EVIDENCE THAT THEY KNEW TO BE FALSE, BUT ALSO THAT THE EVIDENCE WAS USED IN SOME WAY TO DEPRIVE THEM OF LIBERTY. SEE ANDERSON v. CITY OF ROCKFORD, 932 F.3d 494 (7TH CIR. 2019) ALSO AVERY v. CITY OF MILWAUKEE, 847 F.3d 433, 441 (7TH CIR. 2017), BOLDEN v. CITY OF CHICAGO,

5.

# ACTUAL INNOCENTS

I am "FRUSTRATED AND IMPEDED" BECAUSE I HAVE NO MININGFUL ACCESS TO MY LEGAL DOCUMMENTS, OR PROPERLY SPEAKING, TO WHAT IS STILL MAY REMAIN OF MY LEGAL DOCUMMENTS (SEE PETITION) I WILL DO MY BEST IN EXPLAINING WHAT HAPPENED AND HOW WILL BE DIFFERENT IF I WILL BE HAVE MININGFUL ACCESS TO ALL LEGAL DOCUMMENTS BEFORE TRICE.

WHEN I WAS FINALLY ABLE DURING TRIAL TO WORK ON MY CASE WITH LAPTOP CONPUTER EQUIPPED WITH ALL NECE NECESSARY SOFT SOFTWARE INCLUDING TRANSCATION SOFTWARE, I STARTED TO FIND INFORMATION THAT NOT ONLY HELPED MY DEFENSE BUT WHICH ALSO POINTED OUT "MISTAKES" AND "ERRORS" THE GOVERNMENT WAS MAKING WITH THE EVIDENCE AND ITS ARGUMENTS. IN SONE POINT I DISCOVERED AN ALERTED MY LAWYERS THAT THE GOVERNMENT WAS INCORRECTLY PRESENTING "EVIDENCE" AND ARGOING THAT A TELEPHONE CALL WAS MADE ON DECEMBER 14, 2001 FROM MY HOME TELEPHONE NUMBER ALLEGEALY TO UNINDICATED CO-CONSPIRATOR VLADIMIR SOBOLOV IN RUSSIA, (IT WAS EXHIBIT # 770 A) WHEN THE TELEPHONE CALL AT ISSUE WAS PLACED FROM MY CELLULAR TELEPHONE. AFTER THE GOVERNMENT PRESENTED

6.

THIS INCORRECT EVIDENCE, MY ATTORNEY ADVISED GOVERNMENT LAWYERS OF THE "MISTAKE", BUT NEVERTHELESS, THE GOVERNMENT REPEATED THE SAME INCORRECT INFORMATION IN THEIR CLOSING ARGUMENT, WHICH REQUIRED MY ATTORNEY TO BRING THE MISTAKE TO THE JUDGE'S ATTENTION (SEE TRIAL TRANSCRIPT JAN 11, 2007 DAY 62) ON PAGE 61 MY ATTORNEY SAY:

(MR. LASTING: YOUR HONOR, I WANT TO RAISE WITH THE COURT THE ISSUE OF, I BELIEVE, AN INADVERTENT MISSTATEMENT BY MR. DUGDALE (PROSECUTOR) IN HIS REMARKS TO THE JURY. ACTUALLY, WE HAD DISCUSSED THIS. AND I THINK MR. DUGDALE, AT LEAST MY UNDERSTANDING, RECOGNIZES THAT HE MADE A MISTAKE AT LEAST AS TO ONE PIECE OF INFORMATION HE SAID TO THE JURY WAS IN EVIDENCE.)

AND WHICH CAUSED THE GOVERNMENT LAWYERS TO HAVE TO TELL THE JURY ABOUT THE MISTAKE. THE PROSECUTOR DOWNPLAYED THE MISTAKE WHEN HE TOLD THE JURY: "BUT IN ANY EVENT, THERE IS JUST ONE THING TO CORRECT. AND ONE OF THE CHARTS THAT WAS SHOWN TO YOU YESTERDAY SHOWED PHONE CALLS THAT WERE MADE -- REPRESENTED PHONE CALLS WERE MADE FROM A RESIDENTIAL PHONE BELONGING TO DEFENDANT KADAMOVAS PRIOR TO SENDING THE URANSKY RANSOM NOTE. IN FACT, THAT WAS FROM HIS CELL PHONE."

I LATER THEN LEARNED, UPON FURTHER REVIEWING DISCOVERY, THAT THE CALL AT ISSUE WAS NOT ONLY NOT

7.

MADE FROM MY HOME TELEPHONE BUT THAT IT WAS NOT EVEN MADE TO VLADIMIR SOBOLOV BUT RATHER TO VLADIMIR TSUKANOV, A MAN WHOM I DO NOT EVEN KNOW! AND LATER, UPON FURTHER REVIEWING DISCOVERY I LEARNED THAT ALL GOVERNMENT'S NARRATIVE ABOUT AND ARDONA GOVERNMENT EXHIBIT 770 A "CALLS TO "VOVA" PRIOR TO RECEIPT OF UNANSKY RANSON DENAND AT HARDWIRED ELE-CTRONICS" AND MY INVOLVEMENT COMPLETELY FALSE.

NEXT DAY I TRIED TO TALK WITH THE JUDGE, BECA-USE MY ATTORNEY WAS BUSY. SEE TRANSCRIPT DAY B3 JAN 12 2007.

DEFENDANT KADAMOVAS: (MR. KADAMOVAS SPEAKS IN RUSSIAN, THE INTERPRETER TRANSLATES)

"YESTERDAY THE GOVERNMENT CLARIFIED AN ERROR MADE IN ONE OF THE TELEPHONE CALLS. I WOULD LIKE THIS MORNING TO BRING UP THE SAME TYPE OF MATTER AND DISCUSS IT NOW.

THE COURT: WELL, TALK TO YOUR LAWYER ABOUT IT. I THINK THAT'S A JOB FOR HIM TO DETERMINE AND NOT YOU AT THIS TIME.

THEN, DURING MY SENTENCING HEARING ON MARCH 12, 2007 I TRIED TO EXPLAIN TO JUDGE OTHER "MISTAKES" BY THE GOVERNMENT AND MY EXTRIM LIMIT TO DISCO-VERY BUT HE WOULD NOT LESTEN. SEE PETITIONER'S RESPONSE TO COURT ORDER "SHOW CAUSE" DOC. #4. EXH-IBIT #1. LATER I FIND <u>47</u> "MISTAKES" IN THE

8.

GOVERNMENT'S CHARTS-EVIDENCE, SEE "MOTION TO NEFARIOUS ACTS BY THE GOVERNMENT AND PRISON OFFICIALS IN RELATION J. KADAMOVAS LEGAL, DISCOVERY MATERIALS AND TRIAL TRANSCRIPTS" AS EXHIBIT 2, TO DOC #4

9) AS A RESULT OF WORKING ON THE CASE WITH LAPTOP COMPUTER, I FOUND ABOUT 47 "MISTAKES" IN THE EXHIBITS OF THE OPPOSING PARTY WHICH SHOWED TO JURY. THE GOVERNMENT CHANGED THE FACTS IN THE EVIDENCE THAT NEGATIVELY AFFECTED MY DEFENSE.

So..., IMAGIN THAT THE GOVERNMENTS LAWYERS HAVE TO TELL THE JURY ABOUT THE "MISTAKES" IN THEIRS EXHIBITS FOR 47 TIMES! IT IS MORE LIKELY THAN NOT THAT NO RESONABLE JUROR WOULD HAVE CONVICTED ME.

MATERIALITY OF SUPPRESSED EVIDENCE SHOULD BE "CONSIDERED COLLECTIVELY, NOT ITEM BY ITEM". SEE KYLES V WHITLEY, 514 U.S. 419, 436, 115 S. CT. 1555, 131 L. ED. 2d 490 (1995) AND IN 422 "OUR DUTY TO SEARCH FOR CONSTITUTIONAL ERROR WITH PAINSTAKING CARE IS NEVER MORE EXACTING THAT IT IS IN A CAPITAL CASE"

BECAUSE OF THE ACTIONS BY THE GOVERNMENT AND THE BOP, AND BECAUSE I HAVE NO MININGFUL ACCESS TO MY LEGAL DOCUMMENTS NOW, IT IS VERY

9.

HARD FOR ME TO POINT OUT TO ALL "MISTAKES" AND I DO NOT EVEN KNOW WHERE TO START. WHEN MY LAWYERS RAISED A CLAIM (ON DIRECT APPEAL) THAT THE CELL PHONE EVIDENCE IN THIS CASE WAS ADMITTED IN ERROR, THE GOVERNMENT SAID IT DIAN'T MATTER BECAUSE THERE WAS "OVERWHELMING EVIDENCE" OF GUILT AND THE AGGRAVATING FACTORS SUPPORTING THE DEATH PENALTY. IN THAT BRIEF, IT LISTED WHAT IT BELIEVED WERE THOSE ITEMS OF EVIDENCE. I HAVE THIS COPY OF BRIEF <u>SEE ATTACHED AS EXHIBIT #1</u>. I WILL TRAY TO USE GOVERNMENT "EVIDENCE" TO SHOW THE ACCUSATIONS AND PROVIDE DEFENSE OF THOSE ACCUSATIONS AS BEST AS I CAN IN MY CIRCUMSTANCES TO SHOW THAT NOT ONLY I DID NOT COMMIT THIS CRIMES, BUT THAT GOVERNMENT PRESENTED WRONG "EVIDANCES" AND ALSO LACK OF ANY EVIDANCES NECESSARY TO SENTANCE ME TO DEATH.

BEFOR I START, I MUST MANTION THAT HERE, AND NOW, I WILL PROVIDE ONLY SHORT VERSION OF DEFENSE, WITH LIMITED AMOUNT OF EXHIBITS, BUT IF I WILL HAVE AN EVIDENTIARY HEARING AND MY LAPTOP COMPUTER, I WILL BE ABLE TO PRESENT MORE MEANINGFUL PRESENTATION BECAUSE I HOPE THAT I STILL HAVE "BITS AND PIECES" OF MY ATTORNEY PRIVILEGED WORK PRODUCTS ELECTRONICLY, AND ALSO I HAVE REMAINS ON A PAPER.

10.

SEE EXHIBIT #1 AT PAGE 6 TO 9. ALSO, I WILL BE MADE DEFENCE ONLY ON GOVERNMENT CHARGES RELEVANT TO MY SELF AND NOT THE OTHERS CO-DEFENDANTS.

## #1 AT PAGE 6.

THE GOVERNMENT CITES THE TESTIMONY OF AINAR ALT-MANIS THAT HE HELPED ABDUCT ALL 5 VICTIMS, HELPED KILL 3 AND WAS ON A TRIP WHERE THE OTHER 2 WERE KILLED.

DEFENSE: ALTMANIS IS AN ADMITTED KILLER, WHOSE TESTIMONY SHOULD HAVE BEEN VIEWED WITH GREAT SUSPI-CION. HIS FIFE HAVE RECEIVED MORE THEN $100.000 ºº "QUID PRO QUO". HE WAS CLEARLY RESPONSIBLE FOR THESE KIDNAPPINGS AND MURDERS AND TRYING TO SAVE HIMSELF AND HIS BROTHER, WHO WAS NOT IVEN CHARGED. ALTMANIS IS A LATVIAN CITIZEN AND EVIDENCE COULD HAVE SHOWN THAT HE AND HIS FAMILY WERE BUSY SET-TING UP ACCOUNTS IN LATVIAN BANKS FOR THE KIDNAP-PING RANSOM PROCEEDS BEFORE ANY ACTS OCCURRED. (IT IS ACTUALLY IMPORTANT FACT, RELATED TO GOVERNMENT EXHIBIT 770 A " UMANSKY RANSON" I HAVE MANTION ABOVE.) I BELIEVE THAT ALTMANIS's BROTHER RATMOND EIDEKS, WAS INVOLVED IN HIS CRIMINAL ACTIVITY AND THAT ALTMANIS SOMEHOW SUCCEEDED IN CONVINCING THE GOVERNMENT NOT TO CHARGE HIM. THERE IS ALSO PROOF THAT IT WAS ONLY WHEN THE GOVERNMENT ILLEGALLY SEARCHED MY CELL

11.

BEFORE TRIAL, AND TOOK MY PRIVILEGED ATTORNEY CLIENT WORK PRODUCT THAT THEY WERE ABLE TO CONFRONT ACT-MANIS ABOUT HIS PRIOR CRIMINAL ACTIVITY. THE PROSECU-TORS WITHHELD EVIDENCE THAT WOULD HAVE UNDERCUT THE CREDIBILITY OF THE STAR WITNESS, ACTMANIS, BY NOT TURN-ING OVER HIS DIARY TO MY LAWYERS. SEE OCTOBER 22, 2002 DISCOVERY LETTER, ATTACHED AS EXHIBIT #2. THE SAME WITH HIS PHONE CALLS FROM JAILS, THE PROSE-CUTORS RELISED JUST SMOLE PART OF HIS CONVERSATIONS. THE GOVERNMENT SUPPRESSED THE FAVORABLE TO ME EVI-DENCE.

## #2 AT PAGE 6.

THE GOVERNMENT RELIES ON THE TESTIMONY OF MY GIRL-RIEND, NATALYA SOLOVYEVA, THE MOTHER OF OUR DAUGHTER, WHO CLAIMED I RECRUITED HER TO HELP ABDUCT 2 VICTIMS AND WHO CLAIMED I RETURNED FROM AN OVERNIGHT TRIP ON THE DATE ONE OF THE VICTIM WAS KILLED. SHE ALSO CLAIMED I TOLD HER THAT MIKHEL AND I "THREW OUT THE BODY" ON THE TRIP AROUND THE TIME ANOTHER VICTIM, PEULER, DISAPPEARED AND THAT SHE LATER FOUND PEULER'S PASSPORT IN OUR VAN.

DEFENSE: I HAVE NO DOUBT THAT SHE WAS TRYING TO SAVE HERSELF AND OUR TWO YEARS OLD CHILD BY PROVIDING THE GOVERNMENT WITH WHAT THEY WANTED. (THE GOVERNMENT HAD OUR DAUGHTER IN CHILD COSTODY MADE HER AVAILABLE FOR ADACTION.) THE GOVERNMENT PROVIDED

12.

30 HOURS OF TUTORING BEFORE SHE TESTIFIED AGAINST ME AND ALLOWED HER TO TRAVEL ON THE SAME BUS WITH AND SPEND HOURS WITH ANOTHER "COOPERATING WITNESS". HER TESTIMONY IS UNRELIABLE AND CAN BE SHOWN TO BE FALSE AS SHE HAD ALREADY ENGAGED IN IMMIGRATION FRAUD AND KNEW HOW TO LIE. NO PASSPORT OF PEKLER, ALLEGEDLY FOUND IN OUR VAN, WAS EVER PRESENTED AT TRRIAL, BECAUSE IT WAS NO PASSPORT. THE PROSECUTORS WITH-HELD EVIDENCE THAT WOULD HAVE UNDERCUT THE CREDIBILITY OF THEIR WITNESS, BY NOT RELISE SOLOVYEVA'S PHONE CALLS RECORDING FROM JAIL. ALSO, HER DIARY WAS RELISED, AND BY REQUEST OF MY ATTORNEY TRANSLATED FROM RUSSIAN TO ENGLISH, JUST BEFORE HER TEST-IMONY STARTED, BUT I WAS NOT ALLOWED TO HAVE A COPY OF HER RUSSIAN VERSION IN MY POSSESSION. THE GOVERNMENT SUPPRESSED THE FAVORABLE TO ME EVI-DENCE.

## #3 AT 6-7

THE GOVERNMENT CITES THE TESTIMONY OF ALEKSEYUS MALKOVSKIS, WHO ADMITTED HE HELPED ABDUCT VICTIMS KHARABADZE AND SAFIEV, AND WHO SAID HE CLEANED THE WESLIN RESIDENCE AND TWO CARS USED TO TRANSPORT THOSE VICTIMS.

DEFENSE: THIS IS THE WITNESS WHO SPENT HOURS WITH SOLOVYEVA WHEN I BELIEVE THEY COORDINATED THEIR STORIES BY FBI INSTRUCTIONS, TO SAVE THEMSELVES. I

13.

LATER FOUND SEVERAL RECORDINGS OF MARKOVSKIS MONI-
TORED TELEPHONE CALLS WITH HIS WIFE IN WHICH HE
TOLD HER (IN RUSSIAN) THAT THE FBI AND GOVERNMENT
HAD TOLD HIM TO TALK WITCH SOLOVYEVA ON A BUS.
THESE FOUR TAPED CONVERSATIONS WERE ONLY TRANSLATED
AFTER TRIAL TO ENGLISH. MANY OTHER MONITORED CALLS
WAS NEVER RELISED TO ME. ALSO MARKOVSKIS WORK
JOURNAL WAS ALMOST 100% REDACTED WITH BLACK LINES
THAT I WAS NOT ABLE TO SEE HIS WORK ASSIGNMENTS
WHEN HE WORK AND WHERE AT THE RELEVANT TIME
WHEN HE ALLEGEDLY HELPED ABDUCT VICTIMS AND CLEANED
WESLIN RESIDENCE AND TWO CARS WHEN HE WORKED WITH
CARPET CLINING EXPRES CO. THE GOVERNMENT SUPPRE-
SSED THE FAVORABLE TO ME EVIDENCE.

### # 4 AT PAGE 7.

THE TESTIMONY OF VLADIMIR PANIOUCHKIN WHO
CLAIMED I ASKED HIM TO DRAIN TWO OF THE VICTIN'S
BANK ACCOUNTS WITH CREDIT AND DEBIT CARDS HE SAYS I
GAVE HIM.

DEFENSE: PANIOUCHKINE IS ANOTHER COOPERATING
WITNESS WHO AVOIDED PROSECUTION.

### # 6. AT PAGE 7.

THE TESTIMONY OF NINEL FAKTOROVICH A VICTIM'S
(PEKLER) OFFICE ASSISTANT WHO INENTIFIED ME AS
"VOLODIA" THIS VICTIM'S LAST BUSINESS APPOINTMENT BE-

14.

FORE HER DISAPPEARANCE.

DEFENSE: IT LATER CAME TO LIGHT THAT THE OFF-ICE ASSISTANT FAKTOROVICH WAS ACTUALY UNABLE TO PICK ANYONE OUT OF A PHOTO LINEUP AS "VOLODIA" MY PHOTO WAS INCLUDED IN THOSE SHE WAS SHOWN. SEE ATTACHED AS EXHIBIT #5, FBI 302 INTERVIEW

#8 AT PAGE 7.

COLORED DUCT TAPE FROM A VICTIM'S HEAD (MUSCATEL) AND THE BOOT COVER FOUND IN HIS MOUTH MATCHING ITEMS THE GOVERNMENT SAYS "THE DEFENDANTS" BOUGHT AT HOME DEPOT IN THE MORNING OF THE KIDNAPPING.

DEFENSE: IT WAS MIKHEL'S CREDIT CARD THAT WAS USED TO MAKE THE PURCHASES. ALTHOUGH ALTMANIS TESTIFIED THAT I WAS THERE, HIS TELEPHONE RECORDS HAD THEY BEEN USED SHOWED THAT ALTMANIS CALLED ME DURING THIS TIME. WHY WOULD ALTMANIS CALL ME IF I WERE ALREADY WITH HEM?

#9 AT PAGE 7.

A SHOEPRINT FROM A SIZE 7.5 ADIDAS SNEAKER THE GOVERNMENT CLAIMED WAS MINE IN VICTIM MUSCATEL'S BLOOD ON A BRIDGE.

DEFENSE: THERE WAS NO PROOF THAT THOSE SHOES WERE MINE OR ANY BLOOD ON THE SHOES THEY PRESENTED AT TRICE WAS FIND. THERE WAS TESTIMONY AT TRIAL THAT MUSCATEL DID NOT HAVE ANY CUTS ON HIS BODY, (SEE AUTOPSIST REPORT) SO WHERE

15.

WOULD ANY BLOOD HAVE ORIGINATED FOR A SHOEPRINT?

## #10 AT PAGE 7.

AN ENVELOPE WITH MY FINGERPRINTS AND CO-DEFENDANT PETRO KRYLOU'S ON IT, WITH THE PHONE NUMBER FOR A PRE-PAID CELL PHONE THE GOVERNMENT CLAIMED WAS USED DURING A VICTIM'S ABDUCTION (UMANSKY).

DEFENSE: THERE WAS NO EVIDENCE ABOUT WHEN I MIGHT HAVE TOUCHED THAT ENVELOPE, AND, THEREFORE, NO PROOF THAT IT WAS NOT BEFORE THE TELEPHONE NUMBER WAS WRITTEN ON THE ENVELOPE, OR THAT IT WAS MY HANDWRITING, OR IT WAS FIND AT MY POSESSION. IT IS POSSIBLE THAT I HAVE GIVET SOME ENVELOPE TO SOME ONE OR THEY CAN TAKER FROM MY OFFICE WHERE I KEPT ALL SORT OF UTENSILS AND ALL MY CO-DEFENDANTS BEEN OFTEN.

## #13 AT PAGE 8.

VIDEO FOOTAGE OF KARAMOVAS PURCHASING A PRE-PAID CELLULAR TELEPHONE USED IN THE ABDUCTIONS OF KARABADZE AND SAFIEV.

DEFENSE: THIS IS A PERFECT EXAMPLE OF WHAT I COULD NOT SHOW MY ATTORNEYS BEFORE OR DURING TRIAL. IN PRISON, I PUT TOGETHER SOME VIDEOS AND TRUE FROST PICTURES AN EXHIBIT SHOWING THIS COULD NOT BE ME! I ATTACH IT AS EXHIBIT #4 (PLEASE NOTE DIFFERENCE BETWEEN THE BALDNESS PATTERN IN THE GOVERNMENT EXHIBIT — THE TWO TOP PICTURES, AND THE PHOTOGRAPHS OF

16.

THE BACK OF MY HEAD WHICH ARE THE BOTTOM TWO).
I HAVE MORE EXHIBITS WITH EXPLANATIONS ON THIS
GOVERNMENT CLAIM THAT I CAN PUT TOGETHER ONLY
IF I WILL BE ALLOW TO HAVE MY LAPTOP WITH ALL
NECESSARY SOFTWARE, AND THE ABILITY TO SAVE FILES,
I KNOW I COULD HAVE SHOWN ALL THE GOVERNMENT'S
SUPPOSED EVIDENCE TO BE NOT TRUTH.

## #15 AT PAGE 8.

HANDCUFFS SEIZED AT MIKHEL'S HOUSE, WITH THE
SAFIEV'S AND KARABADZE'S DNA, AND KADAMOVRS'S
FINGERPRINTS, ON THEM.

**DEFENSE:** IN AN EFFORT TO TRY TO TIE ME WITH
PHYSICAL EVIDENCE TO THE ACTUAL KILLING OF VICTIMS
SAFIEV AND KHARABADZE, THE GOVERNMENT INCOR-
RECTLY CLAIMED MY FINGERPRINTS WERE FOUND ON
HANDCUFFS THAT CONTAINED THE DNA. **THE ACTUAL
RECORD** SHOWS THAT ONLY SAFIEV'S DNA WAS DETECTED
AND, IN ANY EVENT, MY FINGERPRINTS WERE ALLEGE-
DLY FOUND ON A DIFFERENT SET OF TOY LIKE RES-
TRAINTS, THE GOVERNMENT INTENTIONALLY AND KNOW-
INGLY PRESENT FALSE EVIDENCE AGAINS ME ON APPEAL.

## #16 AT PAGE 8.

RECORDINGS THE GOVERNMENT CLAIMS WERE SEIZED
AT MY HOUSE WITH VICTIM SAFIEV TALKING SUPPOSEDLY
TO ME AND TO PEOPLE THEY SAY I DIRECTED HIM TO
CALL.

17.

DEFENSE: I put many evidence that it simply not thruth on some CD's or DVD's, and hope that I still may have it. But during the trial no on who knew me, identified my voice.

## #19 AT PAGE 8.

Items found at my and Mikhel's business, "Design Water World", the government says were for accounts used to launder ransom money from 3 victims.

DEFENSE: Except for $1000, I kept meticulous records of all my accounts, including all checks, receipts, expenses that I used to do the construction project at Design Water World. Mikhel was my investor; I did not question where the money he invested in Design Water World come from.

## #20 AT PAGE 8-9.

A computer at Designe Water World, that had what they called evidence that someone had researched victim Unansky's auto accessory business before he was kidnapped.

DEFENSE: I have no idea who used the computer and there was no evidence it was me. And my co-defendant Petro Krylov, who had separate trile, admited that he used the computer to show Mikhel about Unansky's business.

18.

## #22 AT PAGE 9.

A MAP AT KRYLOV's HOUSE WITH VICTIM KHARABA-DZE's HOME ADDRESS WRITTEN ON IT AND THEY CLAIM MY FINGERPRINTS WERE ALSO ON IT.

DEFENSE: EVIDENCE AGAINST KRYLOV WAS ALSO USED AGAINST ME, THERE WAS NO EVIDENCE ABOUT WHEN AND WHY I MIGHT HAVE TOUCHED THE MAP, IF AND OR I EVEN TOUCHED IT, MY ATTORNEY NEVER RECHECKED ANY OF GOVERNMENT EXHIBITS!

## #24 AT PAGE 9.

WIRETAPPED CALLS ALLEGED TO BE BETWEEN ME AND MIKHEL, MIKHEL AND KRYLOV, AND MICHHEL AND AN "UNINDICTED CO-CONSPIRATOR" IN RUSSIA DISCUSSING EFFORTS TO COLLECT MORE RANSOM FUNDS FROM TEZHIK AND DIVIDE THE MONEY ALREADY COLLECTED. I DON'T KNOW WHOSE VOICE WAS ON THESE CALLS, NOR I MAKED OR BE PRESENT WHEN THESE CALLS WAS MAKED. MY, OR PROPORLY SAY MIKHEL'S CALL TO ME, WAS WRONGFULY INTREPROTATED, THER WAS NO TALK ABOUT ANY RANSOM FUNDS AT ALL!

THE VERY FEW PIECES OF EVIDENCE THE PROSECU-TORS CLAIM RELATE TO ME COULD HAVE BEEN EXPLAINED AT TRIAL, HAD I BEEN GIVEN ERLY ACCESS TO MY DISCOVERY AND THE ABILITY TO TRANSLATE IT AND WORK ON THE DOCUMENTS, AN ABILITY I STILL DO NOT HAVE.

19.

I ALSO BELIUE THAT ANY EVIDENCE THAT WAS NOT TRANSLATED TO ME AND I WAS NOT BE ABLE TO UNDERSTAND, MUST BE CONSIDERED AS "SUPPRESSED EVIDENCE"

## OFFICIAL COVER-UP
## MY ACCESS TO COURTS CLAIM

INMATES HAVE A CONSTITUNIONAL RIGHT OF MININGFUL ACCESS TO THE COURTS. BOUNDS u SMITH, 430 U.S. 817, 823. 52 L. ED. 2D 72, 97 S. CT. 1491 (1977). THIS RIGHT IS NOT DIMINISHED WHEN A PRISONER IS HOUSED IN A SE-GREGATED UNIT. SEE VALENTINE v. BEYER, 850 F.2D 951, 955 (3D CIR. 1988). A DENIAL OF ACCESS CLAIM MAY BE PREMISED ON THE **CONFISCATION OR DESTRUCTION** OF AN INMATE'S **LEGAL MATERIALS**. SEE, E.G., ZILICH v. LUCHT, 981 F.2D 694, 695-96 (3D CIR. 1992); WRIGHT v. NEWSOME, 795 F.2D 964, 968 (11TH CIR. 1986); CARTER v. HUTTO, 781 F.2D 1028, 1031-32 (4TH CIR. 1986); TYLER v. "RON" DEPUTY SHERIFF OR JAILOR/CU-STODIAN OF PRISONS, 574 F.2D 427, 429 (8TH CIR. 1978); HINEY v. WILSON, 520 F.2D 589, 591 (2D CIR. 1975). TO SUS-TAIN A DENIAL OF ACCESS CLAIM, AN INMATE MUST DEMO-NSTRATE "ACTUAL INJULY." LEWIS u CASEY, 135 L. ED. 2D 606, 116 S. CT 2174, 2179 (1996). HE MUST DEMONSTRATE THAT A NONFRIVOLOUS LEGAL CLAIM ATTACKING HIS SENTENCE OR CHALLENGING THE CONDITIONS OF HIS

CONFINEMENT HAS BEEN "FRUSTRATED OR IMPEDED" AS A RESULT OF A DEFENDANT'S CONFISCATION OF HIS LEGAL MATERIAL. 116 S. Ct. AT 2181-82.

IN MY CASSE THE BOP OFFICIALS DID CONFISCATED AND RESTRUCTED MY LEGAL MATERIALS FOR YEARS, SEE MY PETITION WITH ATTACHMENTS. AS AN "ACTUAL INJURY" I HAVE FILED 5 LAWSUITS, 3 OF THEM WAS NOT BE ABLE TO MOVE FORWARD BECAUSE MY ENGLISH LENGUAGE DIFFICDTIS, IT MUST BE SEEN AS "FRUSTRATED OR IMPEDED" I ALSO MY DIRECT APPEAL.

SEE CHRISTOPHER U. HARBURY, 536 U.S. 403, 414, 416 N. 13, 122 S. Ct. 2179 (2002). CHRISTOPHER WAS NOT A PRISON CASE, AND IT REFERRED TO A CASE WHICH WAS "TRIED TO AN INADEQUATE RESULT DUE TO MISSING OR FABRICATED EVIDENCE IN AN OFFICIAL COVER-UP" RATHER THAN DISMISSED OR NOT FILED BECAUSE OF INADEQUATE LAW LIBRARY ACCESS OR OTHER PRISON SHORTCOMINGS. BUT IT CITES LAWIS U. CASET REPEATEDLY, AND ITS HOLDINGS WOULD SEEM TO BE APPLICABLE TO PRISON CASES GOVERNED BY LEWIS.

IN CHRISTOPHER U. HARBURY, 536 U.S. 403 AT Pp. 412-422 (A) SUPREME COURT EXPLAINED: "ACCESS TO COURTS CLAIMS FALL INTO TWO CATEGORIES; CLAIMS THAT SYSTEMIC OFFICIAL ACTION FRUSTRATES A PLAINTIFF IN PREPARING AND FILING SUITS AT THE PRESENT TIME, WHERE THE SUITS COULD BE PURSUED ONCE THE FRUS-

21.

TRATING CONDITION HAS BEEN REMOVED; AND CLAIMS OF SPECIFIC CASES THAT CANNOT BE TRIED, NO MATTER WHAT OFFICIAL ACTION MAY BE IN THE FUTURE. REGARDLESS OF WHETHER THE CLAIM TURNS ON A LITIGATING OPPORTUNITY YET TO BE GAINED OR AN OPPORTUNITY ALREADY LOST, THE POINT OF RECOGNIZING AN ACCESS CLAIM IS TO PROVIDE SOME EFFECTIVE VINDICATION FOR A SEPARATE AND DISTINCT RIGHT TO SEEK JUDICIAL RELIEF FOR SOME WRONG."

I AM SEEKING JUDICIAL RELIEF AND IT WAS SO MUCH WRONG IN MY CASE, SEE PETITION AND MY RESPONSE TO COURT ORDER Doc #4. WITH ALL EXHIBITS.

FARTHER IN CHRISTOPHER, AT 410 B, COURT SAY: "WITH RESPECT TO THE ACCESS-TO-COURTS CLAIMS, THE DISTRICT COURT ACKNOWLEDGE THAT FIVE COURTS OF APPEALS,, HAVE HELD THAT CONSPIRACIES TO DISTROY OR COVER-UP EVIDENCE OF A CRIME THAT RENDER A PLAINTIFF'S JUDICIAL REMEDIES <u>INADEQUATE OR INEFFECTIVE</u> VIOLATE THE RIGHT OF ACCESS."

IN MY CASE I AM STATED A VALID CLAIM THAT THE BOP OFFICIALS DESTROY MY LEGAL MATERIALS TO COVER-UP PROSECUTORIAL MISCONDUCT AND STOP ME FROM CHALLENGING MY CONVICTION AND DEATH SENTENCE. SEE MY PETITION AND RESPONSE TO COURT ORDER Doc. #4. THE ACTIONS OF BOP OFFICIALS MADE MY 2255 <u>INADEQUATE AND INEFFECTIVE</u>! THE PROCEEDINGS

22.

UNDER SECTION 2255, (AND I NOT TALKIN ABOUT FILING SECOND OR SUCCESSIVE 2255 PETITION BUT, ABOUT THE FIRST ONE) WILL NOT AFFORD ME A REASONABLE OPPORTUNITY TO OBTAIN A RELIABLE JUDICIAL DETERMINATION OF THE FUNDAMENTAL LEGALITY OF MY CONVICTION AND SENTENCE.

## SPOLIATION OF EVIDENCE

A PARTY HAS A DUTY TO PRESERVE EVIDENCE OVER WHICH IT HAD CONTROL AND REASONABLY KNEW OR COULD REASONABLY FORESEE WAS MATERIAL TO A POTENTIAL LEGAL ACTION. FAILURE TO DO SO WOULD CONSTITUTE SPOLIATION OF EVIDENCE. SPOLIATION OF EVIDENCE OCCURS WHEN ONE PARTY DESTROYS EVIDENCE RELEVANT TO AN ISSUE IN THE CASE. SEE JOSEPH v. CARNES, 566 FED. APPX. 530; APP LEXIS 11863 No. 13-3110 (7TH CIR. 2014)

THE 6TH CIRCUIT STATE:

FIRST, THE AUTHORITY TO IMPOSE SANCTIONS FOR SPOLIATION EVIDENCE ARAISES NOT FROM SUBSTANTIVE LAW BUT, RATHER, "FROM A COURT'S INHERENT POWER TO CONTROL THE JUDICIAL PROCESS." SILVESTRI, 271 F. 3d AT 590 (CITING CHAMBERS v. NASCO, INC. 501 U.S. 32, 45-46, 111 S. CT 2123, 115L. EA 2d 27 (1991). SECOND, A SPOLLATION RULING IS EVIDENTIARY IN NATURE AND FEA-

23.

ERAL COURTS GENERALLY APPLY THEIR OWN EVIDENTIARY RULES IN BOTH FEDERAL QUESTION AND DIVERSITY MATTERS. KING v. ILL. CENT. R.R. 337 F.3d 550, 556 (5TH CIR. 2003) THESE REASONS PERSUADE US NOW TO ACKNOWLEDGE THE DISTRICT COURT'S BROAD DISCRETION IN CRAFTING A PROPER SANCTION FOR SPOLIATION. SEE ADKINS v. WOLEVER, 554 F.3d 650 (6TH CIR 2009) OUTCOME: THE COURT VACATED THE DISTRICT COURT'S DECISION AND REMANDED THE CASE TO THE DISTRICT COURT TO DETERMINE WHETHER SANCTIONS FOR SPOLIATION WERE APPROPRIATE AND WHETHER THE INMATE WAS ENTITLED TO A NEW TRIAL BECAUSE THE DENIAL OF ANY SUCH SANCTIONS AFFECTED HIS SUBSTANTIAL RIGHTS.

FOR SPOLIATION OF EVIDENSE BY THE BOP OFFICIALS SEE MY PETITION AT 9 TO 26. WITH EXHIBITS, ALSO Doc #4.

## INABILITY TO PRESENT CLAIM OF ACTUAL INNOCENT ON DIRECT APPEAL

SEE ATTACHED AS EXHIBIT # 5:

THIS IS A PRO-SE MOTION TO THE COURT, WRITTEN BY SOMEONE ELSE ON THE BEHALF AND WITH PERMISSION, AND ASSISTANCE OF JULIUS KABAMOUAS. THE BASIS OF THIS MOTION IS TO ADDRESS ISSUES THAT DIRECTLY EFFECT MY PENDING APPEAL, AND COULD EFFECT FURTHER

24.

APPEALS IF LEFT UNHEARD BY THIS COURT, I PLEAD FOR THE COURTS ASSISTANCE IN RESOLVING THE ISSUES THAT WILL BE MENTIONED. I FILE TO THE CENTRAL DISTRICT OF CALIFORNIA DOK. #003436 RECEIVED BY COURT JUL. 24 2009. SEE 2) A, B, C: "I NEED ATTORNEYS WHO NOT ONLY UNDERSTAND RUSSIAN, (MY NATIVE LANGUAGE) BUT I'D LIKE TO REPLACE THE ATTORNEYS I HAVE FOR SOME WHO NOT ONLY READ AND SPEAK RUSSIAN, BUT ALSO ATTORNEYS WHO WILL TAKE MY CASE SERIOUSLY."

A) "I'VE STRESSED MY INNOCENCE TO MY ATTORNEYS, BUT THEY HAVE YET TO TAKE STEPS TO INVESTIGATE..."

MY ATTORNEYS EXPLAINED TO ME THAT I CANNOT BRING MY INNOCENCE CLAIM TO DIRECT APPEAL BUT, TO 2255 PETITION. SEE RESPONSE TO JULY 20, 2009 ORDER AND MOTION FOR ADDITIONAL COUNSEL, FUNDING FOR TRANSLATION, AND COMPUTER EQUIPMENT AT PAGE 3. "WE HAVE ALSO DISCUSSED MR. KARAMOUAS'S CONCERNS ABOUT INVESTIGATION AND HAVE ATTEMPTED TO EXPLAIN THE DIFFERENCE BETWEEN THE TYPES OF CLAIMS THAT ARE RAISED ON DIRECT APPEAL..." ATTACHED AS EXHIBIT # 5,B"

ALSO SEE "NOTIFICATION OF INTENT TO WITHDRAW APPEALS." AN 9TH CIRCUIT CASE: 07-99009, 04/12/2017, ID: 10405272 DKT: 339 "MY NAME IS JURIJUS KARAMO-VAS, I AM A LITHUANIAN CITIZEN CURRENTLY UNJUSTLY UNDER A UNITED STATES FEDERAL SENTENCE OF DEATH FOR CRIMES I DID NOT COMMIT, WRITING THIS LETTER

25.

TO NOTIFY THE COURT THAT I AM WITHDRAW MY APPEALS FROM THIS POINT FORWARD FOR THE FOLLOWING REASONS.

1) REPEATED EXPOSURE TO TEAR GAS AND SMOKE, DESPITE OF DOCUMENTED BREATHING ISSUES.

2) ONGOING LOSS OF MY LEGAL MATERIALS AND NEFARIOUS ACTS BY THE GOVERNMENT AND PRISON OFFICIALS IN RELATION MY LEGAL MATERIALS.

3) APPEAL PROCESS IS UNREASONABLY PROLONGED.

ALSO I HAVE RAISED RELEVANT ISSUES IN MY "APPELLANT'S PRO SE SUPPLEMENTAL BRIEF" FOR DIRECT APPEAL TO 9TH CIRCUIT, BUT GOT NO CONSIDERATION ON IT. SEE ATTACHED AS EXHIBIT # 6

BEFORE MY APPEAL WAS FILED, I ASK COURT TO AUTHORIZATION FOR FUNDING TO TRANSLATE MY OPENING BRIEF, BOTH, INDIVIDUAL AND JOIN BRIEF WITH CO-DEFENDANT MIKHEL, THE APPELLEE'S BRIEF AND REPLY BRIEF FROM ENGLISH TO RUSSIAN. ALTHOUGH MY ENGLISH HAS IMPROVED OVER TIME, I STILL STRUGGLES WITH THE LANGUAGE. SEE ATTACHED AS EXHIBIT #7. BECAUSE APPELLANT IS REPRESENTED BY COUNSEL AND ONLY COUNSEL MAY FILE MOTIONS, THE COURT THEREFORE DECLINES TO ENTERTAIN MY SUBMISSION, I ASK MY ATTORNEY TO FILE THE SAME REQUEST ON MY BEHALF, BUT THEY ARE FOR UNKNOWN TO ME REASON

26.

REFUSE TO DO SO. THIS BRINGS ME TO OTHER PURPOSE THIS MOTION TO AMEND AND SUPPLEMENT MY PETITION.

## DISCRIMINATION BASED ON LANGUAGE AND NATIONAL ORIGIN CLAIM.

MY CASE REPRESENTS AN EXAMPLE OF DISCRIMINATION BASED ON LANGUAGE AND NATIONAL ORIGIN AND VIOLATION OF PROCEDURAL RIGHTS OF THE COUNCIL OF EUROPE MEMBER STATE CITIZEN, SENTENCED TO DEATH FOR CRIMES I DID NOT COMMIT, IN THE UNITED STATES OF AMERICA.

MY SITUATION WAS IMPOSSIBLE. WHAT COULD BE MORE IMPORTANT THAN KNOWING THE CHARGES AGAINST YOU, BEING INFORMED OF THOSE CHARGES PROMPTLY, IN DETAILS IN A LANGUAGE YOU CAN UNDERSTAND? I HAD NONE OF THAT ARRESTED IN A FOREIGN COUNTRY WITHOUT A LAWYER WHO COULD SPEAK MY LANGUAGE, GIVEN TENS OF THOUSANDS OF PAGES OF DISCOVERY I COULD NOT UNDERSTAND, MOST OF WHICH WAS NEVER TRANSLATED. I THINK IT IS UNFAIR THAT THE SUPERSEDING INDICTMENT CONTAINING THE CHARGES AGAINST ME WAS NOT EVEN TRANSLATED FOR ME UNTIL JANUARY 23, 2004 EVEN THOUGH I WAS ARRESTED ON FEBRUARY 19, 2002. AND THE SECOND SUPERSEDING INDICTMENT, A 40-PAGES DOCUMENT, WAS NOT TRANSLATED

27

FOR ME UNTIL MARCH 4, 2005. <u>SEE ATTACHED EXHIBIT #8</u>, TRANSCRIPT OF PROCEEDINGS, AUGUST 10, 2004 (ATTORNEY MARCIA BREWER ADVISES THE COURT THAT THE CHARGES WERE NOT TRANSLATED INTO MY LANGUAGE BECAUSE SHE DID NOT HAVE FUNDS) IT WAS UNCONSCIONABLE THAT I WAS EXPECTED TO "UNDERSTAND" THESE LENGTHY, COMPLEX CHARGES AND DEFEND AGAINST THEM WHEN THEY WERE SIMPLY READ TO ME ONCE IN JAIL. HOW COULD I BE EXPECTED TO EXPLAIN MY DEFENSE TO MY ATTORNEYS, OR EVEN TELL THEM ABOUT MY ALIBI DEFENSE WHEN I COULD NOT STUDY THE DATES AND TIMES OF THE ALLEGED OFFENSES?

FROM U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION LATTER DATED AUGUST 16, 2010, SIGNED BY THOMAS E. PEREZ ASSISTANT ATTORNEY GENERAL, I LEORN:

"DISPENSING JUSTICE FAIRLY, EFFICIENTLY, AND ACCURATELY IS A CORNERSTONE OF THE JUDICIARY. POLICIES AND PRACTICES THAT DENY LIMITED ENGLISH PROFICIENT (LEP) PERSONS MEANINGFUL ACCESS TO THE COURTS UNDERMINE THAT CORNERSTONE. THEY MAY ALSO PLACE STATE COURTS IN VIOLATION OF LONG-STANDING CIVIL RIGHTS REQUIREMENTS. TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2000 D ET SEQ. (TITLE VI), AND THE OMNIBUS CRIME CONTROL AND SAFE STREET ACT OF 1968, AS AMENDED, 42 U.S.C. § 3789 D (C) (SAFE STREET ACT), BOTH PROHIBIT

28.

NATIONAL ORIGIN DISCRIMINATION BY RECIPIENTS OF FEDERAL FINANCIAL ASSISTANCE. Title VI AND Safe Streets Act REGULATIONS FURTHER PROHIBIT RECIPIENTS FROM ADMINISTERING PROGRAMS IN A MANNER THAT HAS THE EFFECT OF SUBJECTING INDIVIDUALS TO DISCRIMINATION BASED ON THEIR NATIONAL ORIGIN. See 28 C.F.R. §§ 42.104 (B)(2), 42.203 (E).

The Supreme Court HAS HELD THAT FAILING TO TAKE REASONABLE STEPS TO ENSURE **MEANINGFUL ACCESS** FOR LEP PERSONS IS A FORM OF NATIONAL ORIGIN DISCRIMINATION PROHIBITED BY Title VI REGULATIONS. SEE <u>LAU v. NICHOLS</u>, 414 U.S. 563 (1974). EXECUTIVE ORDER 13166, WHICH WAS ISSUED IN 2000, FURTHER EMPHASIZED THE POINT BY DIRECTING FEDERAL AGENCIES TO PUBLISH LEP GUIDANCE FOR THEIR FINANCIAL ASSISTANCE RECIPIENTS, CONSISTENT WITH INITIAL GENERAL GUIDANCE FROM DOJ. See 65 FED. REG 50,121 (AUG. 16, 2000).

IN MY CASE:

1) INDICTMENTS WAS TRANSLATED WITH EXTREME DELAY.

2) DISCOVERY TRANSLATION WAS UNREASONABLY SMALL. ABOUT 250 PAGES OF 95000.

3) TRIAL TRANSCRIPTS WAS NOT TRANSLATED AT ALL.

4) DIRECT APPEAL, OPENING BRIEFS, APPELLEE'S BRIEF AND REPLY BRIEF WAS NOT TRANSLATED AT ALL

5) 9TH CIRCUIT COURT OF APPEALS DECISION WAS NOT

29.

TRANSLATED AT ALL

6) ANY SUPREME COURT PETITIONS WAS NOT TRANSLATED AT ALL.

In WEBSTER v. CARAWAY, 761 F. 3d 764 (7TH CIR 2014) THE 7TH CIRCUIT EXPLAINED: "THE UNITED STATES SUPREME COURT HELD IN THE ATKINS DECISION THAT THE CONSTITUTION FORBIDS THE EXECUTION OF PERSONS WHO ARE RETARDED OR UNABLE TO UNDERSTAND WHAT CAPITAL PUNISHMENT MEANS AND WHY THEY HAVE BEEN SENTENCED TO DIE." So, WHAT ABOUT THE PEOPLE WHO UNABLE TO UNDERSTAND WHY THEY HAVE BEEN SENTENCED TO DIE BECAUSE THEY ARE LIMITED ENGLISH PROFICIENT?

I ALSO BELIEVE THAT THIS SITUATION CONTRADICTS TO THE U.S. OBLIGATIONS UNDER ARTICLES 2, 14, AND 26 OF THE INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS, RELATING TO THE PROHIBITION OF DISCRIMINATION OF IMPRISONED PERSONS, EQUAL PROTECTION OF LAW AND GUARANTEES OF DUE PROCESS. SEE ARTICLE 14, 3A AND B: "IN THE DETERMINATION OF ANY CRIMINAL CHARGE AGAINST HIM, EVERYONE SHALL BE ENTITLED TO THE FOLLOWING MINIMUM GUARANTEES, IN FULL EQUALITY: (A) TO BE INFORMED PROMPTLY AND IN DETAIL IN A LANGUAGE WHICH HE UNDERSTANDS OF THE NATURE AND CAUSE OF THE CHARGE AGAINST HIM;

30.

(B) To have adequate time and facilities for the preparation of his defence and to communicate with counsel of his own choosing." I was deny all of this include attorney who can speak my language, see Exhibit #5.

It also violate " American Convention on Human Rights " Pact of San Jose, Costa Rica (B-52)" and American Declaration of the Rights and Duties of Man. Articles 5, 10, 11, 13.

As well as United Nations Standard Minimum Rules for the Treatment of Prisoners, Rules # 1, 2, 53, 55, 61.

## INTERNATIONAL LAW

As a general rule, international agreements, even those benefiting private parties, do not create private rights enforceable in domestic courts. There are exceptions to this rule, but an international agreement can be considered to create judicially-enforceable private rights only where such rights are contemplated in the agreement itself. Whether a particular international agreement provides for private enforcement is a matter for judicial interpretation of the agreement. See Gaza v. Lappin, 253 F.3d 918 (7ᵀᴴ Cir. 2001)

I do not know all nuances in International Law but, I know that in case I will need to

31.

ASK HELP OR INTERVENTION OF LITHUANIAN, EUROPEAN AND RUSSIAN GOVERNMENTS I MUST EXHAUSTED ALL AVAILABLE DOMESTIC REMEDYS.

## ATTORNEY FOR 2255

ON JULY 18, 2019 THE UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA APPOINTED AN ATTORNEY. ON JULY 25 2019 I FILED MOTION TO REVOKE ORDER GRANTING EX PARTE APPLICATION FOR APPOINTMENT OF COUNSEL FOR PROCEEDINGS PURSUANT TO 28 U.S.C. § 2255. I GOT NO RESPONSE TO MY MOTION.

1) FOR REASONS EXPLAINED IN MY PETITION (SEE PETITION) BECAUSE THE BOP DENIED MY RIGHT TO ATTORNEY - CLIENT PROTECTED COMMUNICATIONS BY OPENING MY LEGAL MAIL WITHOUT MY PRESENCE DENYING MY RIGHTS PURSUANT TO THE SIXTH AND FIRST AMMENDMENT OF THE U.S. CONSTITUTION, AS WELL AS THE DUE PROCESS CLAUSE OF THE FIFTH AMMENDMENT AND MY ACCESS TO THE COURTS. I WILL NOT BE ABLE TO WORK WITH APPOINTED ATTORNEY OR FILE 2255 ON MY OWN, BECAUSE BY THE BOP OFFICIALS ACTIONS I HAVE LOST OVER THE YEARS, SIGNIFICANT PART OF THE LEGAL MATERIALS, ALSO BECAUSE THE BOP OFFICIALS DENYING ME MININGFUL ACCESS TO MY LEGAL DOCUMENTS AND MY LAPTOP WITH ALL NECESSARY SOF-

32.

TWARE, INCLUDE TRANSLATION SOFTWARE NECESSARY TO WORK MEANINGFULY ON MY APPEAL. ALSO FOR ALL REASONS THAT I STATE IN THIS AMENDED COMPLAINT AND TORTUROUS CONDITIONS OF MY 17 YEARS IN SOLITARY CONFINEMENT, EXPLAINED IN MY PETITION AND RESPONSE TO COURT ORDER Doc. # 4.

2) APPOINTED ATTORNEY MAY THINKING THAT THEY ARE WILL BE ABLE TO FILE SOMTHING ON MY BEHALF WITHOUT ME BE PARTISAPATED AT ALL. I NEVER MEET THEM, OR TALK ON THE PHONE, AND FOR REASONS EXPLAINED ABOVE WILL NEVER DO SO. IN SHORT, ONE PAGE LETTER, ATTORNEY SEVERAL TIMES NOTICE TO ME THAT THEY ARE: "...CONTINUING TO WORK ON YOUR CASE, COLLECTING AND REVIEWING DOCUMENTS..." I ABSOLUTELY ASSURED THAT ATTORNEY WILL NEVER EVER, HAVE RIGHT, CORRECT AND COMPLETE COPY OF ALL LEGAL DOCUMMENTS AND TRANSCRIPTS! AS WELL WITHOUT MY PARTISAPATION THEY WILL NEVER GOT A FULL PICTURE OF EVENTS THAT I KNOW MUST BE INVESTIGATED, AND WILL NEVER FILE THEM.

3) AS 7TH CIRCUIT EXPLAINED IN WEBSTER V. CARAWAY: "NO COURT OF APPEALS HAS DEEMED 28 USCS 2255 INADEQUATE OR INEFFECTIVE JUST BECAUSE COUNSEL FAILED TO TAKE MAXIMUM ADVANTAGE OF THE OPPORTUNITY IT EXTEND.

SO, IN MY CASE, NOT I OR MY ATTORNEY

33.

WILL BE ABLE TO TAKE MAXIMUM ADVANTAGE OF THE OPPORTUNITY ALONE.

# CONCLUSION

THEREFORE, FOR ALL THE FOREGOING REASONS PETITIONER KARAMOUAS ASKS THIS COURT TO:

1) HOLD THAT PETITIONER HAS SATISFIED THE JURISDICTION REQUIREMENTS AND CAUSE FOR PROCEEDING UNDER 28 U.S.C. § 2241.

2) FOLLOWING ANY EVIDENTIARY HEARING THAT THIS COURT DEEMS NECESSARY, VACATE KARAMOUAS'S CONVICTION AND SENTENCE AS WELL HIS SOLITARY CONFINEMENT STATUS. SUCH OTHER AND FURTHER RELIEF AS THE COURT MAY DEEM.

DATED 25 MARCH 2020

RESPECTFULLY SUBMITTED

BY. _____

JURIJUS KADAMOUAS
#21050-112
USP TERRE HAUTE
P.O. BOX 33
TERRE HAUTE, IN 47808

34.